IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SHELLY OSGOOD on behalf of herself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| EQUITY BANK, | ) ) |
| Defendant. | ) ) |

**JURY TRIAL DEMANDED**

**Case No. Case No. 4:20-cv-00885-DGK**

**Judge Assigned: David Gregory Kays**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Shelly Osgood, on behalf of herself and all others similarly situated, by counsel, alleges:

### INTRODUCTION

1. Plaintiff brings this action on behalf of herself and a class of all others similarly situated against Defendant Equity Bank ("Equity") over the assessment of more than one insufficient funds fee ("NSF Fee") on the same item—practices that are in breach of Equity's contracts and its duty of good faith and fair dealing and have unjustly enriched Equity.

2. Through the imposition of these fees, Equity has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue. Plaintiff, like thousands of others, have fallen victim to Equity's fee revenue maximization scheme.

3. Plaintiff asserts this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated, for damages and other relief.

### PARTIES

4. Plaintiff Shelly Osgood is a citizen and resident of the State of Missouri, residing in Independence, and has a checking account with Equity.

1

5. Defendant Equity Bank is a stated-chartered bank with over 50 locations in Kansas, Missouri, Oklahoma, and Arkansas. Equity is incorporated in Kansas and its headquarters and principal place of business is in Andover, Kansas; therefore, it is a citizen of Kansas. Equity provides retail banking services to its customers, including Plaintiff and members of the proposed Class.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction, *inter alia*, pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a citizen of a different state than Equity.

7. Equity regularly and systematically conducts business and provides retail banking services in this district, and provides retail banking services to its customers, including Plaintiff Osgood and members of the putative class. As such, it is subject to the jurisdiction of this Court.

8. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Equity is subject to personal jurisdiction in this Court and regularly conducts business within this district through its multiple branches located within this district. In addition, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## FACTUAL ALLEGATIONS

**I. EQUITY CHARGES TWO OR MORE FEES ON THE SAME ITEM**

9. Equity regularly assesses two or more NSF Fees on the *same* item.

10. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—does not undertake the

practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

11. Equity's Account Documents never disclose this practice. To the contrary, Equity's Account Documents indicate it will only charge a single NSF Fee on an item.

### A. Plaintiff's Experience

12. In support of her claims, Plaintiff offers an example of NSF Fees that should not have been assessed against her checking account. As alleged below, Equity: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

13. On November 7, 2019, Plaintiff attempted a single payment to Paypal via ACH.

14. Equity rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $34.98 NSF Fee for doing so. Plaintiff does not dispute the initial fee, as it is allowed by Equity Account Documents.

15. Seven days later, on November 14, 2019, Equity again processed the payment, and this time paid it into overdraft, and charged a *second* $34.98 fee—an OD Fee this time.

16. In sum, Equity charged Plaintiff nearly $70 in fees to attempt to process a single payment.

17. Plaintiff understood the payment to be a single item as is laid out in Equity's Account Documents, capable at most of receiving a single NSF Fee (if Equity returned it) or a single OD Fee (if Equity paid it).

### B. The Imposition of Multiple Fees on a Single Item Violates Equity's Express Promises and Representations

3

18. The Account Documents provide the general terms of Plaintiff's relationship with Equity and therein Equity makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

19. The Account Documents contain explicit terms indicating that fees will only be assessed once per item—defined as a customer request for payment or transfer—when in fact Equity regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

20. Equity's Account Documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

21. Equity's Account Documents state that it will charge a single fee per item or transaction that is returned due to insufficient funds.

22. The same "item" cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

23. There is zero indication anywhere in the Account Documents that the same "item" or "transaction" is eligible to incur multiple NSF Fees.

24. The same "item" on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to reprocess it.

25. There is zero indication anywhere in the Account Documents that the same "item" is eligible to incur multiple fees.

26. The Fee Schedule, Ex. A, states:

Overdrafts and Returned Item Fees Charge Overdraft Charge/Return Check Charge
- each

4

> You will be charged an Overdraft Charge for an overdraft item paid if your account's daily ending balance is overdrawn by more than $5.00.
>
> You will be charged a Return Check Charge for each returned item. No more than $169.90 or five Overdraft or Return Check Charges will be applied on any one business day.
>
> Overdraft Charge applies to overdrafts created by a check, in-person withdrawal, ATM withdrawal, Debit Card transactions or other electronic means.
>
> Return Check Charge applies to an item returned due to insufficient funds.

27. Even if Equity reprocesses an instruction for payment, it is still the same item. Equity's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

28. The Account Documents described never discuss a circumstance where Equity may assess multiple NSF Fees for a single item that was returned for insufficient funds and later reprocessed one or more times and returned again.

29. In sum, Equity promises that one NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, Equity breached the contract when it charged more than one fee per item.

30. Reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in Equity's Account Documents.

31. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which Equity will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Equity disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor have Equity customers ever agree to such fees or practices.

5

32.     Customers reasonably understand, based on the language of the Account Documents and Equity's other documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item.

33.     Equity knows this. That is why in July, 2020 it updated its Terms and Conditions, Ex. B, to disclose its true multiple fee practice for the first time:

> Nonsufficient Funds (NSF) Fees. If an item drafted by you (such as a check) or a transaction you set up (such as a preauthorized transfer) is presented for payment in an amount that is more than the amount of money in your account, and we decide not to pay the item or transaction, you agree that we can charge you an NSF fee for returning the payment. Be aware that such an item or payment may be presented multiple times and that we do not monitor or control the number of times a transaction is presented for payment. You agree that we may charge you an NSF fee each time a payment is presented if the amount of money in your account is not sufficient to cover the payment, regardless of the number of times the payment is presented.

34.     Banks and credit unions, like Equity, that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Equity never did here.

35.     For example, First Hawaiian Bank engages in the same abusive practices as PCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_ RXP1.pdf (last accessed September 25, 2019) (emphasis added).

71.     Klein Bank similarly states in its online banking agreement:
[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn,

6

would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H,

https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed September

25, 2019) (emphasis added).

36. Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under

the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019),

https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx.

37. BP Credit Union likewise states: "We may charge a fee each time an item is

submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result

of a returned item and resubmission(s) of the returned item."

38. Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf.

7

39. First Financial Bank states, "Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly." Special Handling/Electronic Banking Disclosures of Charges, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure _of_ Charges.pdf.

40. Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

https://www.andrewsfcu.org/AndrewsFCU/media/Documents/Terms-and-Conditions_REBRANDED_Dec2019-Update.pdf

41. Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.myconsumers.org/docs/default-source/default-document-library/ccu_membership_booklet_complete.pdf?sfvrsn=6

42. Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and

8

Case 4:20-cv-00885-DGK   Document 16   Filed 05/24/21   Page 8 of 17

represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.wpcu.coop/en-

us/PDFDocuments/Important%20Account%20Information%20Disclosure%20-%20WPCU.pdf

43. Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf

44. Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.]

http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf

45. Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf

46. RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf

47. Diamond Lakes Credit Union states:

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

https://www.diamondlakesfcu.org/termsconditions.html

48. Parkside Credit Union states:

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf?__cf_chl_captcha_tk__=add6ebea42df3385074decd4b16c1f86a8369dc9-1580427763-0-AfXmB7FcyYTqzK9oMNbMSKM6k5fnKS5Xf-z7p3Tv-Pt951tDs7wM8yaaIV06w718t2nomyWR1Q8COwgpfgE07FJWZUeFkJN6lxbXDZG1SvidTWhYm9l85AbCd5afw2imyGdtdzKhXl9bQ9TYkjOlTVM4w8OFJOtE3wVIHrEITnQnSfoR5mZxM5O0bu4f_FHoHiJj0XsjNkVoGblk0-lti6-gMn-Wcu_o87SGQW6dOUF2i6rHGiM_CkdI-ULanKI2NS3KlhkYAuNatN9Jdwr7Plc6oJozMbZQeczuO7VlbRnuCFD0tjzkw1lsnof7uaRvLRAkfKYi3wh0tUU1c_Y6N4aH1qN8SPftOn8TYJHO7OoILvpMfamNTqv_djpbUl3GVA

49. Unlike all these other financial institutions, Equity provides no such disclosure, and in so doing, deceives its accountholders.

### III. EQUITY BREACHES THE COVENANT OF GOOD FAITH AND FAIR DEALING

10

50. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Equity is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Equity has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

51. Here—in the adhesion agreements Equity foisted on Plaintiff and its other customers—Equity has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Equity abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations.

52. Equity acts contrary to reasonable expectations under the Account Documents when it construes the word "item" to mean each iteration of the same payment. This is a breach of Equity's implied covenant to engage in fair dealing and to act in good faith.

53. It was bad faith and totally outside Plaintiff's reasonable expectations for Equity to use its discretion to assess two or more fees for a single attempted payment.

54. When Equity charges multiple fees, Equity uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. Equity uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

11

## CLASS ALLEGATIONS

55. Plaintiff brings this action on behalf of herself and as a class action on behalf of the following proposed class (the "Class"):

> All Equity checking account holders who, during the applicable statute of limitations, were charged more than one NSF Fee, or an NSF Fee followed by an overdraft fee, on the same item (the "NSF Class")

56. Plaintiff reserves the right to modify or amend the definition of the Class as this litigation proceeds.

57. Excluded from the Class are Equity, its parents, subsidiaries, affiliates, officers and directors, any entity in which Equity has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

58. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

59. The Classes consist of thousands of members, such that joinder of all Class members is impracticable.

60. There are questions of law and fact that are common to the Class members that relate to Equity's practice of charging multiple NSF Fees on an account.

61. The claims of Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the Class members.

62. Plaintiff is an adequate representatives of the Class and has retained competent legal counsel experienced in class actions and complex litigation.

63. The questions of law and fact common to the Classes predominate over any questions affecting only individual Class members, particularly because the focus of the litigation will be on Equity's conduct. The predominant questions of law and fact in this litigation include, but are not limited to, whether Equity:

- Imposed multiple NSF Fees, or an NSF Fee followed by an overdraft fee, on the same item;
- Breached its contract with Plaintiff and Class members;
- Breached the covenant of good faith and fair dealing imposed on it; and
- Was unjustly enriched.

64. Other questions of law and fact common to the Classes include the proper method or methods by which to measure damages.

65. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the common issues of the Class members to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Equity, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Equity's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Class will remain unaware of Equity's conduct and the claims they may possess.

66. It appears that other persons who fall within the Class definitions set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

67. This proposed class action does not present any unique management difficulties.

## COUNT I: BREACH OF CONTRACT
(*On behalf of Plaintiff and the Class*)

68. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

69. Plaintiff and Equity have contracted for bank account deposit, checking, and debit card services.

70. Equity breached the terms of its account documents by charging multiple NSF Fees on the same item, or an NSF Fee followed by an Overdraft Fee.

71. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

72. Plaintiff and members of the Class have sustained damages as a result of Equity's breach of the contract.

## COUNT II: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(*On Behalf of Plaintiff and the Class*)

73. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

74. Plaintiff and Equity have contracted for bank account deposit, checking, and debit card services.

75. A duty of good faith and fair dealing is imposed on contracts between banks and their customers because banks are inherently in a superior position to their checking account

holders because from a superior vantage point they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

76. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

77. Equity has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

78. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the account documents.

79. Plaintiff and members of the Class have sustained damages as a result of Equity's breach of the covenant of good faith and fair dealing.

## COUNT III: UNJUST ENRICHMENT
### (*On Behalf of Plaintiff and the Class*)

80. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

81. Plaintiff and members of the Class conferred a benefit on Equity at the expense of Plaintiff and members of the Class when they paid improper NSF Fees.

82. Equity appreciated this benefit in the form of the substantial revenue that Equity generates from the imposition of such fees.

83. Equity has accepted and retained such fees under inequitable and unjust circumstances.

15

84. Equity should not be allowed to profit or enrich itself inequitably and unjustly at Plaintiff' and the Class's expense and should be required to make restitution to Plaintiff Class.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Restitution of all fees paid to Equity by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

C. Actual damages in an amount according to proof;

D. Pre- and post- judgment interest at the maximum rate permitted by applicable law;

E. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

F. For attorneys' fees under the common fund doctrine, and all other applicable law; and

G. Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands a trial by jury.

Dated: May 24, 2021                    Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Matthew L. Dameron*
Matthew L. Dameron        MO Bar No. 52093
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7135
Fax:    (816) 945-7118

16

matt@williamsdirks.com

Taras Kick (*pro hac vice* forthcoming)
Jeffrey Bils (*pro hac vice* forthcoming)
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Tel:	(310) 395-2988
Fax:	(310) 395-2088
taras@kicklawfirm.com
jeff@kicklawfirm.com

Jeffrey Kaliel (*pro hac vice* forthcoming)
Sophia Gold (*pro hac vice* forthcoming)
**KALIEL PLLC**
1875 Connecticut Avenue NW
10th Floor
Washington, D.C. 20009
Tel:	(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

*Counsel for Plaintiff and the Proposed Class*

# CERTIFICATE OF SERVICE

The undersigned certifies that on May 24, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

>	*/s/ Matthew L. Dameron*
Counsel for Plaintiff